## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARY A. LANZAFAME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.  5:18-CV-0454 (LEK/DEP) |
| v. | ) | |
| LOCKHEED MARTIN CORPORATION | ) | COMPLA I NT |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMAND |
| ——————————————————— | ) | |
| | ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to an employee who was adversely affected by such practices.  As alleged with greater particularity below, Plaintiff alleges that Defendant Lockheed Martin Corporation (hereinafter also referred to as "LM" or "Defendant" or "Employer") discriminated against Plaintiff Mary Lanzafame, who is a qualified individual with a disability, when it failed to engage in the required interactive process regarding her qualified disability, and when it failed to accommodate her reasonable requests for accommodation and when it subjected her to adverse consequences in employment as well as when it created a hostile work environment, as a direct and proximate result of the foregoing. On behalf of Plaintiff Mary Lanzafame, (referred to hereinafter as "Mary Lanzafame" or "Plaintiff"), for her complaint against Defendant LM, states as follows:

**Jurisdiction and Venue**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of New York, Syracuse Division.

3.      Venue of this action in the United States District Court for the Northern District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination in the Northern District, and a substantial part of the events giving rise to these claims, occurred here.

4.      All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of disability discrimination with the New York State Division of Human Rights ("NYSDHR") Case Number 10187649, and with the United States Equal Employment Opportunity Commission ("EEOC"). Federal Charge Number 16GB702488.

5.      After duly investigating the foregoing Complaint, the NYSDHR rendered a "Probable Cause" Determination. (Probable Cause Determination, attached as Exhibit "**A**").

6.      Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letter" she received from the EEOC. (EEOC Right To Sue Letter attached as Exhibit "**B**").

2

## PARTIES

7.      Plaintiff, Mary Lanzafame, is an individual and resident of Onondaga County, New York, and was employed at all times relevant hereto by Defendant Lockheed Martin Corporation as a Senior Administrative Assistant.

8.      At all relevant times, Defendant, Lockheed Martin Corporation has continuously been an active "Foreign Business Corporation" in New York State, located at 497 Electronics Parkway in Liverpool, New York, at which facility it employed Plaintiff at all relevant times hereto.

9.      Its principal office is located in Bethesda, Maryland.

10.     At all times relevant hereto, LM has been doing business in New York State, and within the jurisdiction of the Federal Court, Northern District, New York and has continuously had at least 15 employees.

11.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

12.     More than thirty days prior to the institution of this lawsuit, Mary Lanzafame filed a charge with the NYSDHR and EEOC alleging violations of the ADA against Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

13.     Mary Lanzafame began working for Defendant LM in February of 2002 as an Administrative Assistant, and in that role, provided support to a Department Director who changed positions in July of 2015.

14.     Plaintiff then began to provide administrative support to James Snyder at LM.

15.      Plaintiff was, at relevant times hereto, the direct report of Kelly Spilman, Administrative Supervisor at LM.

16.     Following spinal fusion surgery in April of 2016 to address injuries suffered in a car accident on January 13, 2015, Plaintiff was required by her physician to take a medical leave of absence from her employment.

17.     On or about August 15, 2016, Plaintiff's physician approved Plaintiff to return to work, but with certain restrictions which were required as a result of complications from her surgery.

18.     After her surgery, Plaintiff was diagnosed with reflux laryngitis and muscle tension dysphonia, both of which are common disabilities suffered as a result of spinal fusion and which affected Plaintiff's ability to speak and to lift heavy objects, both major life activities.

19.     Plaintiff did in fact return to work in August of 2016, with restrictions in place, which restrictions were accommodated by LM for eight months.

20.     Upon Plaintiff's return to work at LM following her spinal fusion surgery, she was able to perform all essential functions of her positions with accommodation for her restrictions.

21.     The restrictions imposed by her physician upon her return to work were as follows: No lifting, pushing or pulling over 10 pounds; no prolonged bending, stooping or twisting; no ladders; no overhead lifting; no use of machinery or heavy equipment; time off as needed for appointments and therapy.

22.     From time to time, Plaintiff would minimally alter her tasks to accommodate her restrictions, and she was successful at re-integrating herself into the workplace notwithstanding

her spinal disability, reflux laryngitis and muscle tension dysphonia.

23.     On April 10, 2017, Plaintiff's physician altered her restrictions by *increasing* the amount of weight she was authorized to lift at one time from 10 pounds to 15 pounds, and instructed that Plaintiff needed the ability to stand every 30 minutes as needed.

24.     After duly submitting the revised list of restrictions to LM, on or about April 18 or 19, 2017, Defendant, by and through its authorized agent Shannon Powell informed Plaintiff that she was NOT to return to work until her work restrictions were lifted and that LM could not accommodate her restrictions.

25.     Amazingly, LM, a sophisticated multi-billion-dollar federal defense contractor with hundreds of thousands of employees unilaterally and willfully ignored its duty to engage in the required interactive process with Plaintiff by simply telling Plaintiff to stay home until and unless her restrictions were lifted completely.

26.     To add salt to the wound, Defendant Lockheed Martin Corporation denied Plaintiff disability insurance payments because she was unable to perform the essential functions of her position with the restrictions imposed by her physician.

27.     Thereafter, Defendant kept Plaintiff out of work without pay indefinitely.

28.     As of the date the present Complaint is being prepared, Plaintiff has remained out of work, and for all intents and purposes, no longer employed by Defendant insofar as she has not been able to earn a living since Defendant's forced ouster of Plaintiff Lanzafame from employment at LM.

29.     In the NYSDHR Determination, attached as Exhibit 'A", the Division concluded: "The record reflects that rather than engaging Complainant [Plaintiff] in the interactive process, Respondent [LM] relied on Complainant's past performance to determine that Complainant

could not be accommodated, while she continued to have these restrictions."

30.     Meanwhile, there is an utter dearth of evidence even suggesting that Plaintiff's record of past performance was anything less than stellar at any time relevant hereto.

31.     The evidence will show to the contrary, that Plaintiff's tenure at LM was nothing short of stellar; and that she consistently performed the essential functions of her job admirably, punctually and competently, at all times relevant hereto, and even since she was first hired in 2002.

32.     During the Division of Human Rights Investigation, Defendant had the audacity to blame Plaintiff for failing to engage in the interactive process when she did not provide Sedgwick, a third party administrator, with unspecified "additional medical documentation"; however, as the NYSDHR concluded in pertinent part: "…Respondent could not explain what documentation it needed from Complainant in order to allow her to return to work with or without reasonable accommodations."  Exhibit "**A**".

33.     After Plaintiff's return to work from surgery but prior to ousting Plaintiff from employment permanently in April of 2017, Defendant made Plaintiff's life a living hell while she was at work, often forcing her to be in two places at one time, and willfully ignoring some of her restrictions, such as lifting restrictions, when it assigned her tasks to lift items heavier than 10 or even 15 pounds.

34.     Notwithstanding the hostile work environment created by Defendant while she worked from August of 2016 to April of 2017, Plaintiff performed her duties admirably and satisfactorily.

35.     In addition, Shannon Powell's and Defendant's ruthless refusal to engage in the interactive process or to even consider possible accommodations for Plaintiff's restrictions, thus

putting Plaintiff Mary Lanzafame out of work permanently and essentially ruining her career of over 15 years was tantamount to a hostile work environment because it was a malicious act, that had the ultimate penalty attached to it, and was motivated by a cruel and malignant desire to see Plaintiff suffer the penultimate fate in employment – joblessness - all because she dared seek accommodations for restrictions related to a qualified disability.

36.     The accommodations sought by Plaintiff were objectively reasonable and would not have caused an undue hardship on Defendant had it chose to accommodate her.

37.     In any event, whether the accommodations Plaintiff sought were reasonable or whether they would have caused an undue burden on Defendant is not even a dispositive issue in the case at bar because the Defendant cut off discussion with Plaintiff and sent her home after unilaterally deciding it could not accommodate her restrictions, thereby foreclosing even the possibility of accommodation via the required interactive process.

38.     Plaintiff was, at all relevant times hereto, an individual with a qualified disability of which the Defendant was duly made aware by Plaintiff during her employment with Defendant.

39.     At all times during her employment with Defendant, Plaintiff performed the duties of her employment satisfactorily, and was able to perform the essential functions of her position with or without accommodation for her disability.

40.     In light of the foregoing, Defendant also subjected Plaintiff to a hostile work environment inasmuch as the harassment described herein-above was pervasive, outrageous, undeserved and completely unjustified.

41.     In denying Plaintiff's request for accommodation as described above, Defendant failed utterly to engage in the required interactive process and instead affirmatively blocked

Plaintiff's attempt to begin a dialogue about her medical condition.

42.     Plaintiff was qualified for the position she held, and Defendant could have accommodated Plaintiff's request for accommodation without undue hardship as evidenced by the fact that Defendant had already provided Plaintiff with precisely the same accommodation she was seeking in her modified restrictions of April, 2017.

43.     In so doing, defendant maliciously and scornfully discriminated against Plaintiff based upon her disability in an unequivocal violation of the ADA.

44.     The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability and to otherwise have subjected her to emotional distress and physical and mental impairments for which punitive damages are justified.

45.     The unlawful employment practices complained of herein-above above were intentional.

**Counts One and Two: Disability Discrimination in Violation of ADA and N.Y. Exec. Law, art. 15 ("Human Rights Law"):**

46.     Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Counts Three and Four: Hostile Work Environment:**

47.     Defendant created a hostile work environment for Plaintiff in violation of the ADA and Human Rights Law when it scornfully and coldly overworked Plaintiff between August of 2016 and April of 2017, in willful disregard of her restrictions, denied Plaintiff

accommodations, failed to engage in the interactive process with Plaintiff, blamed Plaintiff for its own failure to engage in the interactive process.

### Count Five: Punitive Damages:

48.    Defendant, a multi-billion dollar corporation ought to be punished for its malicious discriminatory treatment of Plaintiff as set forth herein-above.


### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals with a disability when seeking reasonable accommodation for said qualified disability, or perceived disability in the workplace.

B.    Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant Employer to make whole Mary Lanzafame, by providing appropriate back-pay and lost wages, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices. Plaintiff seeks lost future wages that may accrue as a direct and proximate result of the discrimination alleged.

D.    Order Defendant Employer to make whole Mary Lanzafame by providing compensation for past and future pecuniary losses resulting from the unlawful employment

practices described herein-above, including but not limited to: medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

      E.    Order Defendant Employer to make whole Mary Lanzafame by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination and retaliation complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.    Order Defendant Employer to pay Mary Lanzafame individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts to be determined at trial.

      G.    Grant such further relief as the Court deems necessary and proper in the public interest.

JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

                        Respectfully Submitted,

                        S:/ James D. Hartt
                        **JAMES D. HARTT, ESQ.**
                        **Attorney For Plaintiff**
                        **70 Linden Oaks, Third Floor**
                        **Rochester, NY 14625**
                        **Telephone: (585) 490-7100**
                        **Fax: (585) 425-0579**

ORIGINAL of the foregoing was
filed this 13th Day of April, 2018 with:
The Clerk of the Federal District Court
Northern District, New York